**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adrianne Coates, | No.  CV-26-00675-PHX-SHD (DMF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Frank Bisignano, Commissioner of Social Security Administration, | |
| Defendant. | |

**TO THE HONORABLE SHARAD H. DESAI, UNITED STATES DISTRICT JUDGE:**

This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 10).[1]

At issue is the denial of Plaintiff's application for disability insurance benefits under the Social Security Act ("Act").  On February 2, 2026, Adrianne Coates ("Plaintiff" and/or "Coates") filed a Complaint with this Court through counsel (Doc. 1).  In the Complaint, Plaintiff seeks review of the denial of benefits (*Id.*).  After careful review of the record, including Plaintiff's Opening Brief (Doc. 12), Defendant's Answering Brief (Doc. 14), Plaintiff's Reply Brief (Doc. 15), and the administrative record (Doc. 11-1 at 3-173

---

[1] Citation to the record as "Doc." indicates documents as displayed in the official Court electronic document filing system maintained by the District of Arizona under Case No. CV-26-00675-PHX-SHD (DMF).

hereafter, "R."), it is recommended that the final decision of the Commissioner of Social Security ("Commissioner") be vacated and this matter be remanded to the Social Security Administration for further administrative proceedings.

**I.    BACKGROUND**

On January 19, 2023, Plaintiff filed an application for disability benefits under Title II and Part A of Title XVIII of the Act (R. at 204-07).  Plaintiff's application was denied initially on December 18, 2023 (R. at 107-15) and upon reconsideration on May 30, 2024 (R. at 116-25).  Plaintiff thereafter requested a hearing, which was held on December 17, 2024 (R. at 87-106).  On January 31, 2025, Administrative Law Judge ("ALJ") Paul Isherwood issued a decision finding Plaintiff not disabled (R. at 17-27).  On December 2, 2025, the Appeals Council denied Plaintiff's request for review, at which point the ALJ's January 31, 2025, decision became final (R. at 1-3).  Plaintiff thereafter filed the Complaint initiating this matter (Doc. 1).

In the January 31, 2025, decision, the ALJ determined that Plaintiff met the insured requirements of the Act through June 30, 2025 (R. at 20).  After considering Plaintiff's certified earnings record and subsequent reports, the ALJ found that Plaintiff engaged in no substantial gainful activity since the alleged onset date, December 14, 2022 (R. at 20).  The ALJ found that Plaintiff has the following severe impairments: glaucoma, spinal fusion and carpal tunnel syndrome (CTS) (R. at 20).  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (R. at 20).

In analyzing Plaintiff's residual functional capacity ("RFC"), the ALJ considered the statements of Plaintiff and her husband as well as prior administrative medical findings and medical opinions (R. at 20-26).  The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence (R. at 21) and determined that Plaintiff's husband's statements were not supported by the medical evidence of record (R. at 24).  The ALJ

further considered the prior administrative medical findings and the medical opinions of agency medical consultants as well as Douglas Denney, PA-C; Vanousheh Ghandhari, DPM; and Camille Hylton, M.D. (R. at 24-26).  Ultimately, the ALJ concluded that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations: The claimant can frequently handle, finger and feel" (R. at 20).

The ALJ next found that Plaintiff is capable of performing past relevant work as a legal assistant or legal secretary (R. at 26).  In making the determination, the ALJ considered vocational expert testimony that Plaintiff has past relevant work as a legal assistant (DOT 119.267-026) and as a legal secretary (DOT 201.362-010).  The vocational expert testified that Plaintiff's legal assistant work was actually and generally performed at the light level and classified as skilled work with an SVP of 7 and that Plaintiff's legal secretary work was actually and generally performed at the sedentary level and classified as skilled work with an SVP of 6 (R. at 26).  The ALJ compared Plaintiff's RFC to the physical and mental demands of Plaintiff's past relevant work and found that Plaintiff is able to perform the work as actually and generally performed (R. at 26).  The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Act from the alleged onset date of December 14, 2022, through January 31, 2025 (R. at 27).

## II.    LEGAL FRAMEWORK

A district court reviews only the issues raised by the party challenging an ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  If the court finds that the ALJ's decision was not based on substantial evidence or was based on legal error, the court may set aside the decision.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence requires "more than a mere scintilla but less than a preponderance" and should be enough evidence "as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  An ALJ's decision should be upheld if "evidence is susceptible to more than one rational interpretation," but a district court should "consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quotations and citations omitted).

In determining whether a claimant is disabled under the Act, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether a claimant is participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id*. Second, the ALJ determines whether a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. *Id.* Third, the ALJ determines whether the claimant's impairment meets or equals a listing in Appendix 1 of Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant disabled, and the inquiry ends. *Id*. If the ALJ must proceed to step four, the ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id*. If the ALJ must proceed to step five, the ALJ determines whether the claimant's RFC allows the claimant to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**III.    ANALYSIS**

### A.    Summary of the Parties' Positions

#### 1.    *Plaintiff's Opening Brief (Doc. 12)*

Plaintiff challenges the ALJ's determination with respect to step two and step four of the sequential evaluation. Specifically, Plaintiff contends that the ALJ failed to account for Plaintiff's foot impairments before concluding that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) (Doc. 12 at 2). Plaintiff states that she suffers from "several toe and foot impairments that have caused painful limitations in her ability to stand and walk" (*Id.* at 7). Plaintiff explains that "she underwent two left foot surgeries involving screw fixation of the foot" and by 2023 x-ray imaging revealed "'significant joint space narrowing' of both feet with evidence of arthritis" (*Id.*). Plaintiff further states that "[s]he exhibited limited range of motion, crepitus, pain with palpation, and antalgic gait related

to her bilateral foot impairments" (*Id.* at 7-8).

Plaintiff's podiatrist treated Plaintiff's foot impairments and eventually recommended surgery for her left foot and toe (*Id.* at 8). In November 2023, Plaintiff's podiatrist performed the surgery "involving removal of previous painful hardware and left great toe joint fusion with plates, screw fixation, and bone graft harvesting" as well as "a surgical shortening of the metatarsal bone" (*Id.*). Plaintiff states that her foot impairments improved somewhat following the procedure but "had ongoing painful symptoms related to both feet" (*Id.*). Plaintiff's podiatrist opined that Plaintiff suffered from "'severe end stage osteoarthritis' of the right great toe" and that Plaintiff's foot impairments limited Plaintiff's ability to stand and walk (*Id.*).

Plaintiff argues that, despite the medical opinion of Plaintiff's podiatrist, the ALJ "almost entirely failed to acknowledge—much less adequately evaluate—Coates' bilateral foot impairments" (*Id.* at 9). Plaintiff contends that the ALJ failed to identify Plaintiff's foot impairments as "severe" at step two of the sequential evaluation and that the ALJ's RFC analysis at step four omitted discussion of Plaintiff's foot impairments (*Id.* at 9-14). Plaintiff notes that light work as defined by 20 C.F.R. § 404.1567(b) requires "a good deal of walking or standing" which is inconsistent with the medical opinion of Plaintiff's treating podiatrist (*Id.* at 10-11). Upon review, Plaintiff raises three issues for the Court's consideration. First, Plaintiff argues that the ALJ's decision is inconsistent with Social Security Ruling ("SSR") 85-28, 1985 WL 56856, *2, which requires an ALJ to identify impairments at step two that "significantly limit the ability to perform basic work activities" (*Id.* at 9). Second, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to discount Plaintiff's symptom testimony (*Id.* at 10-11). Third, Plaintiff argues that the ALJ erred by failing to address the medical opinion of Plaintiff's treating podiatrist relating to Plaintiff's foot limitations (*Id.* at 11-14). Plaintiff argues that remand is necessary for the ALJ to evaluate her foot related impairments (*Id.* at 14). For relief, Plaintiff asks the Court to reverse the ALJ's January 31, 2025, decision, remand the matter for a new administrative hearing, award Plaintiff costs and reasonable attorney's

fees under the Equal Access to Justice Act, 20 U.S.C. § 2412(d) ("EAJA"), and grant other and further relief as the Court deems just and proper (*Id.*).

2. *The Commissioner's Answering Brief (Doc. 14)*

In the Answering Brief, the Commissioner argues that the ALJ's January 31, 2025, decision is supported by substantial evidence and should be affirmed (Doc. 14). The Commissioner first argues that Plaintiff alleged only problems with her vision and right hand at the hearing (*Id.* at 3). The Commissioner also contends that the ALJ reasonably considered and discussed all of Plaintiff's impairments (*Id.* at 3-7). The Commissioner concedes that the ALJ "did not explicitly discuss Plaintiff's foot conditions at step two of the sequential evaluation" but argues that any omission was harmless because the ALJ fully discussed Plaintiff's foot limitations at step four (*Id.* at 6). Regarding step four, the Commissioner cites several portions of the ALJ's decision and argues that the portions reflect that the ALJ adequately considered Plaintiff's foot limitations (*Id.* at 4-6). The Commissioner argues:

> In his decision, the ALJ considered reports relating to Plaintiff's foot conditions, explaining that a medical examination showed "no shooting pain down the surface of the leg with hip flexion and knee extension in the sitting position with dorsiflexion of the foot." AR 22, 458-59. The consultative examination report cited by the ALJ showed that Plaintiff had normal gait, could "stand, walk to the examination table, get onto and sit on the examination table without assistance and without difficulty," and could "lift each foot off the ground and stand without assistance and demonstrated appropriate balance including walking on heels, toes and tandem walking." AR 458. The consultative examiner even reported that Plaintiff had normal muscle bulk and tone "without atrophy" in the lower extremities, which showed intact ("5/5") strength. AR 459. On examination, Plaintiff had "[n]o shooting pain down the surface of the leg." AR 459. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (italics in original). The ALJ thus discounted any alleged limitation related to foot symptoms.
>
> Additionally, the ALJ considered and discussed other evidence relating to Plaintiff's foot conditions, including a medical opinion provided by Plaintiff's podiatrist, Vanousheh Ghandhari, DPM. AR 25, 513-15. Dr.

Ghandhari opined that Plaintiff could only walk 1-2 city blocks without rest or significant pain and had other limitations. AR 513-14. However, the ALJ reasonably explained that Dr. Ghandhari's opinion was "less persuasive because it [was] not supported by relevant objective medical evidence, inconsistent with evidence from other medical sources, and contradicted by other factors." AR 25; *see* 20 C.F.R. § 404.1520c(b)(2) (explaining that the two most important factors in determining an opinion's persuasiveness are supportability and consistency). For example, the ALJ pointed out that although Dr. Ghandhari opined Plaintiff had lifting limitations, he provided no medical explanation for such limitations. AR 25, 514 (Dr. Ghandhari providing no citation or explanation for lifting restrictions). The ALJ also explained that Dr. Ghandhari's opinion was inconsistent with other evidence, including reports that Plaintiff went for walks, performed exercises with weights, drove a car when going places, shopped in stores, prepared daily meals, and had no problems performing activities of self-care. AR 25, 260-62, 277-79. In sum, contrary to Plaintiff's assertion, the ALJ reasonably considered Plaintiff's foot conditions.

(Doc. 14 at 5-6). Thus, the Commissioner argues that substantial evidence supports the ALJ's decision and asks the Court to affirm the ALJ's January 31, 2025, decision (*Id.* at 6-7).

### 3. Plaintiff's Reply Brief (Doc. 15)

In her Reply Brief, Plaintiff first contests the Commissioner's suggestion that Plaintiff did not adequately raise her foot impairments at the hearing (Doc. 15 at 2-4). Plaintiff states that at the hearing, Plaintiff's attorney explicitly raised her foot impairments as a basis for her disability and engaged in a lengthy discussion of the impairments causing the ALJ to ask Plaintiff's attorney to abbreviate his remarks (*Id.* at 2-4). Plaintiff also argues that the passages cited by the Commissioner do not reflect that the ALJ adequately addressed Plaintiff's foot impairments because the ALJ discussed Plaintiff's foot impairments in passing and addressed only the identified severe impairments—glaucoma, spinal fusion, and carpal tunnel syndrome (*Id.* at 4-5). Plaintiff reasons that such incidental mentions of her foot impairments do not satisfy the ALJ's obligation to address each of Plaintiff's impairments (*Id.*).

///

///

**B.      Failure to Identify Plaintiff's Alleged Foot Impairments as "Severe"**

*1. Legal Standard*

In step two of the analysis, the ALJ must assess "whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing 20 C.F.R. § 404.1520(a)(4)(ii)).  The finding of a severe impairment is necessary for the ALJ to find the claimant disabled.  *Webb*, 433 F.3d at 686.   This step is a "de minimis screening device used to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).  Therefore, "properly denying a claim at step two requires an unambiguous record showing only minimal limitations."  *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023).

For an impairment to be severe, the claimant must show that it significantly limits his ability to perform basic work activities for twelve consecutive months or more.  20 C.F.R. § 404.1509; *see Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1522(b).  A diagnosis of a particular impairment does not entitle the claimant to a finding of limitation.  *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that an ALJ is not required to believe the disabling effect of every symptom "or else disability benefits would be available for the asking").

The ALJ must consider Plaintiff's subjective symptoms in determining severity.  20 C.F.R. § 404.1529(d).  When evaluating subjective symptom testimony, an ALJ must first find objective medical evidence demonstrating an impairment that could reasonably cause a claimant's symptoms.  *Smolen*, 80 F.3d at 1281-82; 20 C.F.R. § 404.1529(a)-(b).  A claimant's subjective testimony alone will not establish a disability, and an ALJ will determine whether the claimant's alleged limitations are consistent with medical sources.  20 C.F.R. § 404.1529(a).  Once the claimant has shown such an impairment, if there is no evidence of malingering, the ALJ may reject a claimant's symptom testimony only if the

ALJ offers "specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283-84. The specific, clear, and convincing reasons must be supported by evidence in the record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). Although an ALJ may consider the objective medical evidence, the ALJ may not use a lack of such evidence as the sole basis to discount a claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); 20 C.F.R. § 404.1529(c)(2). An ALJ may also consider a "claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); 20 C.F.R. § 404.1529(c)(3). If "the evidence is susceptible to more than one rational interpretation[,]" the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (superseded by statute on other grounds).

Moreover, the finding of an impairment as non-severe at step two does not remove it from consideration in a claimant's disability determination. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Indeed, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe in determining a claimant's RFC. 20 C.F.R. § 404.1545(a)(2).

Nevertheless, a district court will not reverse the decision of an ALJ for an error that is harmless. *Burch*, 400 F.3d at 679. Error is harmless if it "was inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (citations omitted). The party asserting error bears the burden of showing prejudice resulting from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).

### 2. *Plaintiff's Testimony*

In connection with her disability claim, Plaintiff completed a function report regarding the effects of her symptoms (R. at 259-67). In the report, Plaintiff stated that "the osteoarthritis I have in my feet cause[s] pain when standing still and walking for long lengths of time" (R. at 259). Plaintiff specified that her foot pain impaired her sleep and

that she cannot "sit or stand too long for food preparation" (R. at 260, 261). Plaintiff further stated that her osteoarthritis, among other things, prevented her from "sitting for hours at [her] desk" (R. at 266-67).

At the hearing, Plaintiff's attorney explained that Plaintiff's osteoarthritis, among other things, limits Plaintiff to sedentary work and prevents Plaintiff from performing her past work (R. at 93-94). However, Plaintiff provided no further symptom testimony at the hearing (*see* R. at 94-101).

### 3. *Opinion of Vanousheh Ghandhari, DPM*

Dr. Ghandhari opined that Plaintiff suffered from "severe end stage osteoarthritis" of the "right great toe" which caused pain while standing or walking (R. at 518). Dr. Ghandhari further opined that Plaintiff was limited to walking one to two city blocks before needing to rest and elevate her foot (R. at 513), Plaintiff was limited to standing no more than 30 minutes at one time and sitting no more than one to two hours at a time (R. at 518), Plaintiff would require three unscheduled breaks during an eight-hour work day (R. at 518), and Plaintiff would likely be absent four or more days per month due to her impairments (R. at 518). Dr. Ghandhari also opined that Plaintiff suffers from moderate pain, Plaintiff is not a malinger, and Plaintiff's pain frequently interferes with attention and concentration (R. at 517).

### 4. *The ALJ's Findings*

The ALJ found that Plaintiff "has the following severe impairments: glaucoma, spinal fusion and carpal tunnel syndrome (CTS)" (R. at 20).

### 5. *Discussion*

The record reflects that the ALJ was sufficiently put on notice of Plaintiff's foot impairments. As Plaintiff points out, her attorney discussed Platiniff's foot related impairments at the hearing and argued that Plaintiff's osteoarthritis limits Plaintiff to performing sedentary work (R. at 94). Moreover, Plaintiff stated in the function report that her osteoarthritis interfered with her ability to stand, walk, and sit (R. at 259-67).

Further, the Commissioner appears to concede that the ALJ erred at step two of the

sequential evaluation.  In the Commissioner's Answering Brief, the Commissioner states:

> Admittedly, the ALJ did not explicitly discuss Plaintiff's foot conditions at step two of the sequential evaluation.  AR 20.  But any omission was harmless.  Even where an ALJ errs in not including an impairment as "severe" at step two, if "step two was decided in [the claimant's] favor," the claimant "could not possibly have been prejudiced" and any "alleged error is therefore harmless and cannot be the basis for a remand." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  For example, an ALJ's failure to identify an impairment as severe at step two is harmless where the "ALJ considered any limitations posed" by the impairment at a later step of the sequential evaluation.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Here, although the ALJ did not explicitly discuss foot conditions at step two, the ALJ fully considered them later in the sequential evaluation, as just discussed.  AR 22 (discussing medical report showing normal gait and no foot abnormalities), 25 (discussing treating podiatrist's medical opinion).  In short, the ALJ fully considered and discussed Plaintiff's pertinent impairments.

(Doc. 14 at 6).  The Commissioner is correct that the ALJ harmlessly erred at step two.

Although the ALJ failed to discuss Plaintiff's foot impairments at step two, it is undisputed that the ALJ decided step two in Plaintiff's favor.  Indeed, the ALJ determined that Plaintiff has several other severe impairments (R. at 20) and continued to discuss steps three and four of the sequential evaluation (R. at 20-27).  Accordingly, any error at step two is harmless.  *See Buck*, 869 F.3d at 1049 (concluding that an ALJ's error at step two was harmless because "step two was decided in [the plaintiff's] favor" and the plaintiff "could not possibly have been prejudiced").

### C.    Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony regarding Plaintiff's osteoarthritis (Doc. 12 at 10-11).

### 1.    Legal Standard

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine "whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At the first step, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." *Id.*  The claimant need not "produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.*  The specific, clear, and convincing reasons must be supported by evidence in the record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). Although an ALJ may consider the objective medical evidence, the ALJ may not use a lack of such evidence as the sole basis to discount a claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); 20 C.F.R. § 404.1529(c)(2). An ALJ may also consider a "claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); 20 C.F.R. § 404.1529(c)(3). If "the evidence is susceptible to more than one rational interpretation[,]" the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (superseded by statute on other grounds).

### 2. Plaintiff's Testimony

As discussed above, Plaintiff completed a function report stating that "the osteoarthritis I have in my feet cause[s] pain when standing still and walking for long lengths of time" (R. at 259).  Plaintiff specified that her foot pain impaired her sleep and that she cannot "sit or stand too long for food preparation" (R. at 260, 261).  Plaintiff further stated that her osteoarthritis, among other things, prevented her from "sitting for hours at [her] desk" (R. at 266-67).

At the hearing, Plaintiff's attorney explained that Plaintiff's osteoarthritis, among other things, limits Plaintiff to sedentary work and prevents Plaintiff from performing her

- 12 -

past work (R. at 93-94). However, Plaintiff provided no further symptom testimony at the hearing (*see* R. at 94-101).

### 3. The ALJ's Findings

Regarding Plaintiff's symptom testimony, the ALJ stated that Plaintiff "alleges glaucoma, spinal fusion and CTS" (R. at 21). The ALJ's findings did not address Plaintiff's reported foot limitations (*see* R. at 21-23).

### 4. Discussion

The ALJ did not provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's reported foot limitations. As Plaintiff correctly points out, the ALJ failed to address Plaintiff's reported limitations in her feet and toes in the discussion about her symptom testimony (Doc. 12 at 10-11). The ALJ addressed only Plaintiff's allegations of "glaucoma, spinal fusion and CTS" (R. at 21-23).

The ALJ must engage in a two-step process to evaluate subjective symptom testimony. Here, the ALJ engaged in no analysis of Plaintiff's reported foot limitations. Plaintiff stated in a functional report that the osteoarthritis in her foot interferes with her ability to stand, walk, and sit and Plaintiff's attorney explained that Plaintiff's osteoarthritis limits Plaintiff to sedentary work (R. at 93, 259-67). Yet, the ALJ's decision addresses only Plaintiff's reported glaucoma, spinal fusion and CTS.

In the Answering Brief, the Commissioner argues that the ALJ properly discounted any alleged limitation related to Plaintiff's foot symptoms because the ALJ relied on medical examination which showed "no shooting pain down the surface of the leg with hip flexion and knee extension in the sitting position with dorsiflexion of the foot" (Doc. 14 at 4-5). Yet the cited portion relates to the ALJ's discussion of Plaintiff's alleged symptoms due to a spinal fusion rather than foot impairments (R. at 22). Moreover, medical evidence relating to pain experienced while "in the sitting position with dorsiflexion of the foot" does not address Plaintiff's alleged symptoms while standing or walking. Because the ALJ failed to properly address Plaintiff's reported foot limitations, the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for discounting

Plaintiff's symptom testimony. *See* SSR 96-8p[2] 1996 WL 374184, *5 (In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Further, the ALJ's error is not harmless. If Plaintiff's testimony regarding her foot limitations was credited, Plaintiff's RFC would have included additional limitations. Accordingly, the error was not inconsequential to the ultimate nondisability determination. *See Stout*, 454 F.3d at 1055.

It is recommended that the ALJ's January 31, 2025, decision be vacated and this matter be remanded for consideration of Plaintiff's reported foot limitations.

### D.    Medical Source Opinion

Plaintiff argues that the ALJ erred by rejecting the opinion of her treating podiatrist, Vanousheh Ghandhari, DPM (Doc. 12-13).

#### 1.    Legal Standard

For disability benefits claims filed before March 27, 2017, Social Security Administration ("SSA") regulations classified medical opinion sources into three types: 1) treating physicians (who treat a claimant), 2) examining physicians (who examine but do not treat a claimant), and 3) non-examining physicians (who do not examine or treat a claimant). *Lester*, 81 F.3d at 830. An ALJ was instructed to give more weight to treating medical sources than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declined to give controlling weight to a treating physician's contradicted opinion, the ALJ had to provide "specific and legitimate reasons supported by substantial evidence" for rejecting that source's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

For disability benefits claims filed after March 27, 2017, including the application

---

[2] SSRs "are binding on all components of the Social Security Administration" and "represent precedent[ial] final opinions and orders and statements of policy and interpretations" of the SSA. 20 C.F.R. § 402.35(b)(1); *see also Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984) (noting that an SSR "may be superseded, modified, or revoked by later legislation, regulations, court decisions or rulings"). Although SSRs do not carry the force of law, "[t]hey are binding on ALJs." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 n.6 (9th Cir. 1989) (citing *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th Cir.1988)); *see also Heckler*, 465 U.S. at 873 n.3.

in the present case[3], SSA regulations instruct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ should determine the persuasiveness of each medical opinion using the following factors: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) any other relevant factors. *Id.* The SSA has explained that supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how he considered both factors. *Id.*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5853 (Jan. 18, 2017) (codified at 20 C.F.R. § 404). "Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence, while consistency concerns how 'a medical opinion is consistent with the evidence from other medical and nonmedical sources.'" *Kitchen v. Kijakazi*, 82 F.4th 732, 739-40 (9th Cir. 2023) (quoting *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022))

In 2022, the Ninth Circuit held that the 2017 SSA regulations no longer require an ALJ to provide specific and legitimate reasons for rejecting a medical source opinion. *Woods*, 32 F.4th at 787. Instead, an ALJ decision to discount a medical source opinion must be supported by substantial evidence. *Id.* As the Ninth Circuit explained, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.

### 3.    *Opinion of Vanousheh Ghandhari, DPM*

As discussed above, Dr. Ghandhari opined that Plaintiff suffered from "severe end stage osteoarthritis" of the "right great toe" which caused pain while standing or walking (R. at 518). Dr. Ghandhari further opined that Plaintiff was limited to walking one to two city blocks before needing to rest and elevate her foot (R. at 513), Plaintiff was limited to standing no more than 30 minutes at one time and sitting no more than one to two hours at

---

[3] Plaintiff filed her application on January 19, 2023 (R. at 204).

a time (R. at 518), Plaintiff would require three unscheduled breaks during an eight-hour work day (R. at 518), and Plaintiff would likely be absent four or more days per month due to her impairments (R. at 518).  Dr. Ghandhari also opined that Plaintiff suffers from moderate pain, Plaintiff is not a malinger, and Plaintiff's pain frequently interferes with attention and concentration (R. at 517).

Dr. Ghandhari also reported that Plaintiff could occasionally lift less than ten pounds (R. at 514).  At the hearing, Plaintiff's attorney explained that Dr. Ghandhari's "opinion would be primarily relevant to . . . standing and walking" (R. at 100-01).

### 4.    The ALJ's Findings

In considering Dr. Ghandhari's opinion, the ALJ acknowledged the diagnosis that Plaintiff suffered from "right hallux rigidus with a fair prognosis" (R. at 25).  The ALJ further acknowledged Dr. Ghandhari's opinion that Plaintiff "had pain with walking," Plaintiff could "sit[] 6-7 hours and stand and/or walk[] 1-2 hours in an 8-hour workday," and Plaintiff "did not need an assistive device to ambulate" (R. at 25).  The ALJ also considered Dr. Ghandhari's opinion that Plaintiff could occasionally lift less than 10 pounds (R. at 25).  However, the ALJ found Dr. Ghandhari's opinion "less persuasive because it not supported by relevant objective medical evidence, inconsistent with evidence from other medical sources, and contradicted by other factors" (R. 25).  The ALJ reasoned:

> First, Dr. Ghandhari is a podiatrist opining on lifting limits, which are based on her right hallux rigidus and not degenerative disc disease. Second, the objective medical evidence does not support this opinion. A study of the lumbar spine dated October 10, 2023 revealed posterior fusion hardware and interbody spacer at L4-5 intact without loosening, there is 4 mm anterolisthesis of L4 and L5, posterior alignment otherwise appears normal, normal alignment, mild disc space narrowing at L5-S1 and sacrum and coccyx intact (Exhibit 9F/1). A study of the cervical spine revealed degenerative disc disease and the findings included moderate disc space narrowing at C5-6 and C6-7, no fracture, normal soft tissues, normal alignment and the odontoid process appeared intact and lateral masses are symmetric (Exhibit 9F/2). A study of the thoracic spine revealed no acute findings (Exhibit 9F/3). Additionally, the claimant also reported she is able to independently care for her personal needs, do light cooking, light housework, goes for a walk, sometimes exercises with weights, run errands

as needed and attend physical therapy and doctor's appointments, as scheduled (Exhibits 4E, 6E and 13E). She reported she is able to drive, attends church, able to shop in stores and by computer for groceries, home goods and occasional clothing. She reported she is able to pay bills, count change, handle a savings account and use a checkbook. She reported she does not read or sew anymore because her eyes get tired; however, is able to watch TV, go to the movies and take are of houseplants once in a while. The claimant also reported she spends time with others in person, on the phone, by email, texting and mail (Exhibit 6E). Accordingly, the undersigned finds [Dr. Ghandhari's] opinion less persuasive.

(R. at 25).

### 4.    Discussion

The ALJ's decision to discount Dr. Ghandhari's opinion regarding Plaintiff's foot impairments is not supported by substantial evidence. Although a portion of the ALJ's decision is devoted to Dr. Ghandhari's opinion, the ALJ failed to articulate how he considered the supportability and consistency of Dr. Ghandhari's opinion regarding Plaintiff's foot impairments. Instead, the ALJ focused on Dr. Ghandhari's opinion that Plaintiff could occasionally lift less than ten pounds (R. at 25). The ALJ discounted Dr. Ghandhari's opinion regarding lifting because "Dr. Ghandhari is a podiatrist opining on lifting limits, which are based on her right hallux rigidus and not degenerative disc disease" (R. at 25). The ALJ further explained that Dr. Ghandhari's opinion is not supported because studies of Plaintiff's lumbar, cervical, and thoracic spine revealed generally normal findings (R. at 25). Yet, the cited spine studies are inapposite with respect to Dr. Ghandhari's opinion about Plaintiff's foot impairments and associated walking and standing limitations. Further, Plaintiff's reported activities do not necessarily negate Dr. Ghandhari's opinion and the ALJ failed to explain how Plaintiff's activities contradict Dr. Ghandhari's opinion. For example, Plaintiff's ability to "pay bills, count change, handle a savings account and use a checkbook" or to "spend[] time with others in person, on the phone, by email, texting and mail" in no way contradicts Dr. Ghandhari's opinion regarding Plaintiff's foot impairments (see R. at 25). Additionally, Plaintiff's reported ability to "independently care for her personal needs, do light cooking, light housework,

goes for a walk, sometimes exercises with weights, run errands as needed and attend physical therapy and doctor's appointments" does not necessarily contradict Dr. Ghandhari's opinion. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (no indication that plaintiff's home basic activities were transferable to work or conflicted with reported symptoms).

Thus, substantial evidence does not support the ALJ's decision to discredit Dr. Ghandhari's opinion regarding Plaintiff's foot impairments. In discrediting Dr. Ghandhari's opinion regarding Plaintiff's foot impairments, the ALJ erred. If the ALJ credited Dr. Ghandhari's testimony regarding Plaintiff's foot limitations, Plaintiff's RFC would have included additional limitations. Accordingly, the error was not inconsequential to the ultimate nondisability determination. *See Stout*, 454 F.3d at 1055. Upon remand, the ALJ should consider Dr. Ghandhari's opinion regarding Plaintiff's foot impairments.

## IV.    CONCLUSION

The ALJ failed to support the rejection of Plaintiff's symptom testimony and Dr. Ghandhari's opinion regarding Plaintiff's foot impairments with substantial evidence. Moreover, Dr. Ghandhari's opinion and Plaintiff' symptom testimony if credited would have altered the ALJ's RFC analysis. Thus, the errors were not inconsequential to the ultimate nondisability determination. It is therefore recommended that the final decision of the Commissioner be vacated and this matter be remanded for further administrative proceedings.

Accordingly,

**IT IS RECOMMENDED** that the January 31, 2025, decision of ALJ Paul Isherwood (R. at 17-27) be vacated.

**IT IS FURTHER RECOMMENDED** that this case be remanded to the Social Security Administration for further administrative proceedings.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal

Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72. In addition, LRCiv 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated this 26th day of June, 2026.

_____
Honorable Deborah M. Fine
United States Magistrate Judge